IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 4:23-CR-225<br>Judge Mazzant |
| | § § | |
| KYLE CARTER | § | |

## DEFENDANT'S OMNIBUS MOTION *IN LIMINE*

TO THE HONORABLE AMOS L. MAZZANT:

Defendant Dr. Kyle Carter ("Dr. Carter") files this Omnibus Motion *in Limine* which seeks to preclude the government from (1) offering summary witness testimony reiterating the facts of its case, (2) offering FED. R. EVID. 801(d)(2)(E) testimony without establishing the necessary predicate, (3) offering evidence of the fact of the Mouzan Bass indictment[1] or evidence outside the scope of Dr. Carter's indictment, and (4) offering evidence or referencing any civil or regulatory violations of state or federal law.

### I.    SUMMARY WITNESS TESTIMONY THAT REITERATES THE FACTS OF THE GOVERNMENT'S CASE

Although there is no rule or statute that expressly authorizes "summary" testimony, it is the government's practice to proffer the testimony of one or more summary witnesses. Generally, a summary witness is a case agent who has not been excluded from the courtroom pursuant to the Rule, and, typically, the government's summary witness testifies at or near the end of the government's case.

---

[1] *See* Case No. 4:24-CR-00007.

**DEFENDANT'S OMNIBUS MOTION *IN LIMINE* – PAGE 1**

The proscription against a government summary witness repeating or paraphrasing an in-court witness's prior testimony is based upon a recognition of the inherent dangers of such a practice, including the danger that "the credibility of [a] summary witness may be substituted for the credibility of the evidence summarized." *United States v. Fullwood*, 342 F.3d 409, 413 (5th Cir. 2003); *see also United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993).

The Fifth Circuit has "repeatedly warned" of the dangers of the admission of summary witness testimony. In *United States v. Nguyen*, the court stated, "[w]e have stressed that the purpose of summary evidence 'is not simply to allow the government to repeat its entire case-in-chief shortly before jury deliberations.' Summary witnesses may 'not be used as a substitute for, or a supplement to, closing argument.'" 504 F.3d 561, 572 (5th Cir. 2007) (quoting *Fullwood*, 342 F.3d at 413–14). It is well-established that summary witness testimony is cautioned against.

While the use of summary evidence may serve an important purpose, it does not allow the government to repeat its entire case-in-chief before close and jury deliberations. Here, there is concern that the government will seek to use a case agent or an insurance investigator as a summary witness to summarize its case-in-chief. Therefore, if this issue arises, the Court should preclude the use of summary testimony by a government witness.

## II. PROPER FED. R. EVID. 801(D)(2)(E) TESTIMONY

Dr. Carter anticipates the government will seek admission of testimony under the co-conspirator hearsay exception of Rule 801(d)(2)(E). To admit evidence under the exception, the government "must prove by a preponderance of the evidence '(1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy.'" *United States v. Delgado*, 401 F.3d 290, 298 (5th Cir. 2005) (quoting *United States v. Robinson*, 367 F.3d 278, 291–92 (5th Cir. 2004)).

Use of a co-conspirator's statements at trial "may be so highly prejudicial as to color other evidence even in the mind of a conscientious juror." *United States v. James*, 590 F.2d 575, 579 (5th Cir. 1979). As a result, "[w]hen reasonably practicable," a court should determine whether the government meets its burden before admitting a co-conspirator's statement. *Id*. at 582; *see also United States v. Fragoso*, 978 F.2d 896, 900 (5th Cir. 1992) (explaining that *James*, in part, "emphasizes the trial court's procedural duty to make findings 'upon appropriate motion' before admitting coconspirator statements" (quoting *James*, 590 F.2d at 582)).

Here, the defense expects that the government will seek to admit FED. R. EVID. 801(d)(2)(E) testimony without laying the necessary predicate. Therefore, prior to the admission of any evidence under the relevant hearsay exception, the Court should require the government to establish the requisite elements by a preponderance of the evidence.

### III. THE FACT OF AND EVIDENCE FROM THE *BASS* INDICTMENT

Here, the indictment charges one defendant, in one conspiracy, based on alleged actions from April 2014 to 2018. The government alleges Dr. Carter defrauded private insurance carriers in connection with the submission of claims for athletic trainers' services and received around $50,000 for doing so. *See* ECF No. 1. In contrast, the *Bass* indictment (defined below) charges that three other defendants, between 2014 and 2023, engaged in a conspiracy to commit wire fraud (Count I), conspiracy to commit healthcare fraud arising from the Covid-19 pandemic (Count II), and a money laundering conspiracy (Count III). *See* Case No. 4:24-CR-00007, ECF No. 9. The *Bass* indictment alleges that those conspiracies caused losses of $70 million dollars. *Id*.

The government should be precluded from making reference to the charges in, mention the existence of, or otherwise invoke the *Bass* indictment or offer in evidence related to that case. This risk is particularly acute because the government filed a motion for joinder of the two matters just

weeks before Dr. Carter's trial. *See* ECF No. 42. This Court subsequently denied that motion. *See* Tr. of Mot. Hr'g, 4:23-cr-00225, at 15, 65–66 (July 24, 2024).

Fundamentally, the *Bass* indictment and any related evidence clearly fall outside of the scope of Dr. Carter's indictment, has limited probative value, and is highly prejudicial and confusing to the jury. Pursuant to Federal Rules of Evidence 402 and 403, the government should be precluded from introducing the existence of the *Bass* indictment or any evidence arising from Counts I–III of *Bass,* as it is outside the scope of the alleged conspiracy period in this case.

A. **Legal Standard**

"As the Supreme Court has instructed, evidence in criminal trials must be 'strictly relevant to the particular offense charged.'" *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). Federal Rule of Evidence 402 provides that irrelevant evidence is not admissible. Relevant evidence is evidence that both (i) "has a tendency to make a fact more or less probable than it would be without the evidence" and (ii) "the fact is of consequence in determining the action." FED. R. EVID. 401. Courts should preclude evidence that is wholly irrelevant to any of the charges. *See, e.g., Hays*, 872 F.2d at 586–89 (reversing conviction where the government introduced evidence that was highly irrelevant to the charged conspiracy).

Even if a piece of evidence is marginally relevant, the trial court has discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. The Fifth Circuit has noted that the "unfair prejudice" contemplated by Rule 403 is that which would cause a jury to be unable to consider the evidence submitted only for the purpose for which it was created and to instead interpret the evidence as evidence of a defendant's bad character or some other purpose.

*See, e.g., United States v. Cook*, 557 F.2d 1149, 1153–54 (5th Cir. 1977) (holding that it was reversible error for the trial court to admit evidence of an injunction previously issued against defendant, even where limiting instruction was given to the jury, because the injunction documents were likely to have had a significant prejudicial impact on the jury). Evidence may also be improperly admitted and in violation of Rule 403 where the evidence has a tendency to cause the jury to make inferences that are too attenuated given all of the other evidence presented. *See, e.g., United States v. Frick*, 588 F.2d 531, 537 (5th Cir. 1979) (reversing conviction of one alleged co-conspirator where witness testimony could have given rise to an inference that the alleged co-conspirator was in fact a member of the conspiracy when the government failed to present other sufficient evidence linking him to one).

**B.** **Argument**

  1. *The Bass indictment and prosecution should be excluded*.

The Court should exclude any reference to *Bass* or its prosecution because they are irrelevant, unduly prejudicial, and will confuse the issues. The *Bass* indictment charges three different defendants for conduct allegedly spanning more than a decade and based on actions that far exceed the scope of Dr. Carter's charges. Additionally, Dr. Carter is not mentioned in the *Bass* indictment, nor are the *Bass* defendants mentioned in Dr. Carter's indictment. Further, if the government needed the facts of the *Bass* indictment in its case against Dr. Carter, it should have filed a superseding indictment seeking to link Dr. Carter's alleged actions with the *Bass* defendants—a fact this Court noted in its denial of the government's joinder motion. While Count I in both indictments overlap, that does not render the fact of the *Bass* indictment relevant. Indeed, the existence of an indictment itself is of minimal probative value. *See Pearson v. Deutsche Bank AG*, No. 21-CV-22437, 2023 WL 2784966, at *2 (S.D. Fla. Apr. 5, 2023) ("[T]he mere fact of an indictment has minimal relevance or probative value.") (citing *Baxter Health Care Corp. v.*

*Spectramed Inc.*, No. SA CV 89-131 AHSRWRX, 1992 WL 340763, at *4 (C.D. Cal. Aug. 27, 1992)). And here, the fact of the *Bass* indictment serves no probative value.

However, the prejudicial risks of the *Bass* indictment in Dr. Carter's case are overwhelming. Reference to, or introduction of, the *Bass* indictment may lead the jury to interpret that indictment as evidence of Dr. Carter's involvement in a larger, unrelated scheme. Simply put, allowing reference to the *Bass* indictment muddles the narrow issue in Dr. Carter's case with those stemming from the three separate counts in the *Bass* indictment, and the *Bass* indictment will mislead the jury as to who did what, when, and Dr. Carter's involvement in the same.

The government cannot now combine these prosecutions when it has chosen to, and was mandated to, keep them separate. Balancing the considerations of probative value and undue prejudice, the *Bass* Indictment should be excluded in its entirety. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Harry Brown & Co., LLC*, No. 2:13-CV-350-PGB, 2016 WL 503057, at *2 (M.D. Ala. Feb. 5, 2016) ("The court agrees that evidence of criminal indictments…of persons not parties in this case is of limited probative value and is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury and is, therefore, due to be excluded under Fed. R. Evid. 403."); *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. CV 13-0366, 2016 WL 9412702, at *3 (E.D. La. May 6, 2016) (stating that "the probative value of the indictment is substantially outweighed by the danger of unfair prejudice"); *Baxter Health Care Corp.*, 1992 WL 340763, at *3 (stating that "the balance under Rule 403 thus falls in favor of excluding any reference to the indictment").

Furthermore, if the *Bass* indictment is referenced at trial, counsel for Dr. Carter will be required to thoroughly question witnesses and investigating agents regarding the prosecutorial decisions to indict Dr. Carter separately than the *Bass* defendants. Counsel will waste the Court

and the jury's time explaining why Dr. Carter was indicted in October as opposed to January, why his indictment was kept under seal, why it was separate than the *Bass* defendants, and the government's failed attempt at joinder. Should the government put forth evidence or insinuation of the *Bass* indictment, it will necessarily open the door to many misleading, confusing, and irrelevant topics for this trial. Reference to or insinuation of the *Bass* indictment should be prohibited.

2. *Any evidence arising from Counts I–III of the Bass indictment should be excluded as outside the time period of the indictment.*

The government should be precluded from introducing any evidence related to Counts I–III in the *Bass* indictment that are outside the time period and scope of the conspiracy charged in Dr. Carter's indictment. Any probative value that may come from introducing evidence arising under the *Bass* Indictment that is outside of the time period charged in Dr. Carter's conspiracy is far outweighed by the dangers of undue prejudice. FED. R. EVID. 403.

The government charged Dr. Carter with a very specific, narrowly defined offense and time period (from April 2014 to 2018). It is therefore improper for the government to attempt to prove Dr. Carter's guilt at trial by showing the jury evidence outside of the time period charged. Any proposed evidence outside of the charged conspiracy period is not relevant to proving any material fact in this case.[2] Simply put, documents and communications outside the charged conspiracy period are not relevant to proving Dr. Carter's guilt.

Although Count I in the *Bass* indictment is "Conspiracy to Commit Wire Fraud," the conduct at issue in that matter involves three separate individuals, spans almost a full decade

---

[2] The government filed a Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 404(b) (the "Notice") (ECF 70) on July 31, 2024. The government's Notice references conduct "in 2019." ECF 70 at 2. The defense is filing a response to the Notice by or before August 7, 2024 that details how this is improper Rule 404(b) evidence.

(2014–2023) and alleges a loss of millions of dollars. The wide swath of facts at issue in *Bass*, compared with the narrow facts in this case, renders the probative value of any evidence related to that Count minimal at best. There is no mention of Dr. Carter in the *Bass* indictment; he left Vivature in 2018 when he sent a letter resigning effective *immediately*. Any act outside of the timeframe which Dr. Carter was involved with Vivature is necessarily irrelevant to his case, outside of his knowledge, outside of the timeframe implicated in his indictment, and it should be excluded from his trial.

The prejudice to Dr. Carter is immeasurable if this information is permitted at trial. Information related to a larger, longer conspiracy involving millions (not thousands) of dollars, significantly expands the timeline in his indictment without notice. A jury could easily confuse the sweeping allegations at issue in *Bass* (considering the number of actors, years, and money at play) with the narrow allegations in this matter. *See, e.g., United States v. Cook*, 557 F.2d at 1153–54.

As an example of irrelevant conduct outside of the charged conspiracy against Dr. Carter, Count II in the *Bass* indictment is "Conspiracy to Commit Healthcare Fraud," involving actions the *Bass* defendants allegedly took between **October 2020 and January 2022** in relation to Covid-19 testing and programming by the Health Resources and Services Administration ("HRSA"). The government alleges that the three defendants unlawfully and unjustly enriched themselves by obtaining government funds from HRSA through materially false and fraudulent pretenses, representations, and promises. But no evidence related to these allegations has any probative value on the allegations against Dr. Carter—nor could it, as the alleged Count II conspiracy started in 2020—two years after Dr. Carter left. Further, with regard to Count II, the government must prove a conspiracy to defraud the *federal government*—not private insurance carriers like in the indictment against Dr. Carter.

In contrast, the potential prejudicial impact on Dr. Carter of introducing evidence of an entirely different conspiracy involving government funds meant for the public as part of the Covid-19 pandemic is significant. At its most basic level, allowing evidence under Count II violates Rule 403 because the jury could make the reasonable inference that Dr. Carter was involved in the HRSA scheme, even though the timing is clearly different, the alleged victims are different, and the government has no evidence linking him to it. *See, e.g., Frick*, 588 F.2d at 537. As a result, any evidence related to Count II of the *Bass* Indictment should be precluded.

Similarly, Count III in the *Bass* indictment is "Conspiracy to Commit Money Laundering," covering actions the *Bass* defendants allegedly took between 2014 and 2023. Once again, evidence with respect to this Count has no probative value towards the allegations against Dr. Carter. Count III requires proof of the charged defendants' conspiracy to commit money laundering for nearly a decade, yet there is no allegation that Dr. Carter was involved in the money laundering scheme nor that he knew about it. Permitting the government to introduce evidence related to a money laundering conspiracy would severely prejudice Dr. Carter, confuse the facts at issue in his case, and mislead the jury. Fundamentally, the indictments, brought separately and prosecuted as such, should stand alone, and the government should not be able to introduce any extraneous evidence under the indictment outside the scope of the charged conspiracy period. For these reasons, Rule 403 should preclude the government from discussing evidence related to Count III.

### IV. EVIDENCE OR TESTIMONY REGARDING CIVIL OR REGULATORY VIOLATIONS

The government should be precluded from offering evidence or testimony of any civil or regulatory violation of state or federal law, or evidence of any civil suit or complaint regarding regulatory compliance. Evidence of regulatory violations are "legally irrelevant" and can be excluded where the "government's evidence and argument concerning violations of [a regulatory

provision] impermissibly infect[] the very purpose for which the trial was being conducted." *United States v. Christo*, 614 F.2d 486, 492 (5th Cir. 1980). As a result, courts may exclude evidence of regulatory or civil violations when the purpose of the trial is to determine the existence of a criminal offense with different elements. *Id*.

Dr. Carter is not facing trial for civil violations but instead faces the criminal charge of conspiracy to commit wire fraud. Any evidence of civil or regulatory violations is irrelevant. While the government can point out that violations of contracts are just that—breaches of contract—it should not be permitted to introduce civil or regulatory violations of state or federal law. This is highly prejudicial and permits the jury to apply an "alternative standard of guilt" that the Fifth Circuit held was reversible error in *Christo*. 614 F.2d at 491. For these reasons, the Court should preclude the government from introducing evidence of any civil or regulatory violation of state or federal law or evidence of any civil suit or complaint regarding regulatory compliance.

Dated: August 5, 2024
Respectfully submitted,

*/s/ Jeff Ansley*
Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
State Bar No. 24109938
agoodman@vedderprice.com
Samuel M. Deau
State Bar No. 24135506
sdeau@vedderprice.com
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790

## CERTIFICATE OF CONFERENCE

On August 5, 2024, I conferred with Assistant U.S. Attorney Anand Varadarajan, lead counsel for the government in this case. AUSA Varadarajan advised that the government will file a response explaining its position to this filing.

*/s/ Jeff Ansley*
Jeffrey J. Ansley

## CERTIFICATE OF SERVICE

I certify that on August 5, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that a true copy of the foregoing was furnished by CM/ECF to all counsel of record.

*/s/ Jeff Ansley*
Jeffrey J. Ansley