IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:23-CR-225 |
| | § § | |
| KYLE CARTER | § | |

### DEFENDANT'S MOTION TO DISMISS INDICTMENT

TO THE HONORABLE AMOS L. MAZZANT:

Defendant Kyle Carter ("Dr. Carter") respectfully moves this Court to dismiss the Indictment as time-barred by the statute of limitations set forth in 18 U.S.C. § 3282 and the Speedy Trial Act.

### I.     INTRODUCTION

The indictment against Dr. Carter must be dismissed because the government improperly sealed the indictment causing violations of the statute of limitations and the Speedy Trial Act. *See* ECF No. 1 (the "Indictment"). Simply put, there was no legitimate prosecutorial basis to seal the Indictment, and the sole reason the government sealed the Indictment in October 2023 was to avoid waiving the statute of limitations. The statute of limitations expired on November 26, 2023, following Dr. Carter's withdrawal from any alleged conspiracy. On November 26, 2018, Dr. Carter mailed a letter directly to Vivature, the company the government alleges he conspired with, stating that, effective immediately, he was no longer working with Vivature.[1] Ex. 1 (Withdrawal Letter). All of Dr. Carter's actions after that date were consistent with an unequivocal

---

[1] Dr. Carter denies an alleged conspiracy ever existed, and to the extent any alleged conspiracy did exist, Dr. Carter denies his involvement. By presenting the issue of withdrawal in connection this motion to dismiss, Dr. Carter neither admits the existence of, nor his participation in, any conspiracy.

withdrawal, making November 26, 2018 the undisputed date of withdrawal from the conspiracy as a matter of law.

After many years of investigation, detailed *infra*, the government secured an indictment against Dr. Carter on October 11, 2023, just within the five-year statute of limitations. The government chose to seal the Indictment at that time, pointing only to the fact that Dr. Carter's arrest may have a "chilling effect" on an ongoing investigation. Yet Dr. Carter had withdrawn from any such conspiracy nearly five years prior, and the ongoing investigation into the conspiracy in *U.S. v. Bass*, *III et al.,* Case No. 4:24-CR-00007 ("*Bass*"), bore no relation to the conduct Dr. Carter has been charged with, but with a COVID-19 testing scheme. By the time the government unsealed the Indictment and arrested Dr. Carter in January 2024, the statute of limitations had expired. It is clear the government had no legitimate basis to seal the Indictment and utilized this procedure only to buy itself more time to evade the statute of limitations. The Court should therefore dismiss the Indictment against Dr. Carter with prejudice.

Even setting aside the violation of the statute of limitations, by impermissibly sealing the Indictment, the government violated the Speedy Trial Act. Again, the Indictment should be dismissed with prejudice as there is no remedy for the government's impermissible actions.

## II.     BACKGROUND

On October 11, 2023, the grand jury indicted Dr. Carter on one count of conspiracy to commit wire fraud. The Indictment is based on allegedly fraudulent insurance submissions relating to private healthcare providers and athletic trainers, with a charged time period of approximately April 2014 through 2018. Indictment at ¶¶ 11, 15–23. Dr. Carter's alleged kickbacks are about $50,000. *Id.* at ¶ 23.

### A. The Government Knew Dr. Carter Affirmatively Withdrew from Any Alleged Conspiracy on November 26, 2018, Causing Limitations to Run on November 26, 2023.

The government first advised Dr. Carter by letter ("Target Letter") that he was a target of a grand jury investigation on September 13, 2021. *See* Ex. 2. Target Letter. Following the receipt of the Target Letter, counsel for Dr. Carter and the government met. Indeed, the government's investigation started in 2019, well before it issued Dr. Carter a target letter. *See* Indictment ¶ 21. During a November 2021 meeting, the government advised Dr. Carter it would soon indict him. After that meeting, the government did not contact Dr. Carter for over a year.

On July 19, 2023, the government issued Dr. Carter a second Grand Jury Subpoena. *See* Ex. 3 (Grand Jury Subopena). In response, Dr. Carter produced hundreds of documents. *See* Ex. 4 (Aug. 9, 2023 Letter). Dr. Carter's production included the November 26, 2018, letter that he authored to Vivature CEO Mouzon Bass advising him that Dr. Carter "formally resign[s] from all activities associated with Vivature and ask that [Vivature] remove my name from any and all activities effective immediately." *See* Ex. 1.

Therefore, based on the government's receipt of Dr. Carter's letter of resignation from Vivature dated November 26, 2018, the government was on notice that Dr. Carter affirmatively withdrew from any alleged conspiracy on that date. The government's own charging instrument further supports that it knew Dr. Carter had no involvement with any conspiracy past November 26, 2018, as there are no allegations that Dr. Carter played any role past 2018. *See* Indictment ¶¶ 11, 15–23.

### B. The Government Seals Dr. Carter's Indictment in October 2023.

On October 11, 2023, the grand jury indicted Dr. Carter. At that time, the government decided to seal Dr. Carter's indictment and withhold his information from the National Crime Information Center. Effectively, Dr. Carter was indicted, but no one aside from the government

and grand jury knew he was under indictment, in spite of the fact that Dr. Carter knew he was under investigation, had his attorneys meet with the government, and had been told to expect an indictment as early as January 2022. At this time, the only claimed basis to seal the Indictment was an unrelated, ongoing investigation into Dr. Carter's alleged co-conspirators and the fear that Dr. Carter's "arrest will have a chilling effect on the [*Bass*] investigation." *See* Ex. 5 (Oct. 12, 2023 FD-1057).

However, as the government recently admitted, at the time of Indictment, the government did not believe that the count Dr. Carter was charged with was sufficiently related to its ongoing investigation of alleged co-conspirators to join Dr. Carter in the subsequent indictment returned in the *Bass* case. *See Bass*, ECF No. 9. That is so because the ongoing investigation into the *Bass* defendants was related to an alleged COVID-19 testing scheme that Dr. Carter had nothing to do with. *See* ECF No. 52. Based on the government's prior representations to that Dr. Carter would be indicted in January 2022, it is clear that the government believed it had sufficient evidence to indict him then. However, based on documents Dr. Carter produced to the government pursuant to a grand jury subpoena in August 2023, the government knew that Dr. Carter's statute of limitations period was about to run. The Indictment was ultimately unsealed on or about January 22, 2024, nearly two months after the statute of limitations had run. The government went on to secure millions of documents in post-indictment discovery in January 2024, despite having started its investigation in 2019.

    **C.**    **The Government Admits It Did Not Determine Dr. Carter's Indictment Was Necessary to the Bass Case until after It Executed a Search Warrant in January 2024.**

Just over two weeks ago, on July 17, 2024, the government moved to join Dr. Carter's case with *Bass*. ECF No. 42. The government alleged that it did not determine that it was appropriate to join Dr. Carter with the *Bass* case until post-indictment investigation but failed to point to any

specific evidence that would support joinder. Instead, in support of its motion, the government merely relied on purported trial efficiencies to allow "the jury and the Court [to] understand the two different schemes and they would see the consecutive flow from one scheme to the other and the commonality of both the actors orchestrating the two schemes." Ex. 6, July 24, 2024 Mot. Hearing Tr. at 34:23–35:2. It further stated, "As the investigation has progressed, issues have continued to arise that would now shift the calculus in deciding the benefits of having a joint trial . . . ." *Id.* at 15:22–16:2. While the government acknowledged that "the way that this was charged was a natural progression of the actual investigation," upon information and belief, it had advised at least some of the other defendants in the *Bass* case of the investigation and of their status as targets prior to Dr. Carter's indictment in fall of 2023.[2]

Following argument on July 24, 2024, the Court ultimately denied the government's motion for joinder. While the Court held that the government's motion was not timely, Dr. Carter maintains that it was also meritless. The government wholly failed to satisfy Rule 8(b) because the allegations in *Carter* and *Bass* Counts 2 and 3 had wholly unrelated schemes, co-conspirators, and victims, making joinder inappropriate.

The statements made in connection with joinder eliminate the government's justification for sealing the Indictment in *Carter*. The government cannot claim that in October 2023 it was concerned about a chilling effect on the conspiracy that Dr. Carter allegedly participated in, and also that it would not have been appropriate to join Dr. Carter with *Bass* until post-indictment investigation. These statements are in direct opposition and support the conclusion that the government sealed the Indictment not for any proper purpose, but only as a way to circumvent the

---

[2] The Department of Justice's *Justice Manual* defines a "target" as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." U.S. DEP'T OF JUST., JUSTICE MANUAL § 9-11.151. Therefore, the government determined that it had sufficient evidence to identify the *Bass* defendants as defendants in the fall of 2023.

statute of limitations. Further, the government identified the *Bass* defendants as targets, which further eliminates any "chilling effect" of Dr. Carter's indictment.

### III. ARGUMENT

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, this Court is authorized to make a pretrial determination of any defense or objection that the court "can determine without a trial on the merits," including to dismiss an indictment on statute of limitations grounds. FED. R. CRIM. P. 12(b)(1) advisory committee's notes to subdivs. (b)(1), (2). Courts have ruled on 12(b) motions where the statute of limitations defense is based upon withdrawal from the conspiracy, and where the defense is that the statute of limitations was not tolled where the indictment was sealed for an improper purpose. *See, e.g.*, *United States v. Grimmett*, 150 F.3d 958, 961 (8th Cir. 1998); *United States v. Boswell*, No. 23-30315, 2024 WL 3506194, at *6 (5th Cir. July 23, 2024).

The government is required to seek indictment for an alleged violation of 18 U.S.C. § 1349 within five years. 18 U.S.C. § 3282(a) ("[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time . . . . Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie v. United States*, 397 U.S. 112, 114–15 (1970); *see also Smith v. United States*, 568 U.S. 106, 112 (2013) (a "statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill-suited for prosecution"). In general, "criminal limitations statutes are to be liberally interpreted in favor of repose." *United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998) (internal quotation marks omitted).

The Fifth Circuit has held that where an indictment was properly sealed, the statute of limitations is tolled from the date of indictment. *United States v. Sharpe*, 995 F.2d 49, 50 (5th Cir. 1993) ("[A] ***properly sealed*** indictment does indeed toll the statute of limitations . . . .") (emphasis added). But, where there was no proper purpose to seal an indictment, the statute of limitations is not tolled. *United States v. Boswell*, No. 23-30315, 2024 WL 3506194, at *6 (5th Cir. July 23, 2024). An indictment is properly sealed where it is requested "for any legitimate prosecutorial objective or where the public interest otherwise requires it." *United States v. Sharpe*, 995 F.2d 49, 50 (5th Cir. 1993). "[V]arious prosecutorial objectives, including, but not limited to, the facilitation of arrest," will justify the sealing. *United States v. Srulowitz*, 819 F.2d 37, 40 (2d Cir. 1987) (internal citation omitted). Further, "even a properly sealed indictment will not toll the statute of limitations if the defendant can show substantive and actual prejudice." *Boswell*, 2024 WL 3506194, at *6.

In the first instance, the sealing of an indictment is "a ministerial act, and it is wholly within the discretion of the Magistrate whether to require the prosecutor to justify a request to seal." *United States v. Sharpe*, 995 F.2d 49, 52 (5th Cir. 1993). The government must, if challenged, "explain and support the legitimacy of its reasons for sealing the indictment. The government only does so, however, at a hearing after the indictment is unsealed." *Id.*[3] While the magistrate judge's initial decision to seal is given deference, such deference has been limited or rejected where the magistrate was not provided "an actual explanation from the [g]overnment of its need for sealing." *See United States v. Gigante*, 436 F. Supp. 2d 647, 660 (S.D.N.Y. 2006).

---

[3] Dr. Carter specifically requests a hearing to determine whether the government had any legitimate prosecutorial purpose in sealing the Indictment.

### A. The Government Improperly Sealed the Indictment Resulting in a Violation of the Statute of Limitations.

The government improperly requested that the Indictment against Dr. Carter be sealed with no legitimate prosecutorial purpose or public interest rationale. As a result of his withdrawal from any alleged conspiracy, the statute of limitations for the claims against Dr. Carter was set to run on November 26, 2023, and in order to avoid that fact, the government improperly sealed the Indictment. The statute of limitations was therefore not tolled and had already run by the time the government unsealed the Indictment in January 2024. As detailed *infra*, the Court must therefore dismiss the Indictment against Dr. Carter.

#### 1. *Dr. Carter affirmatively withdrew from any alleged conspiracy on November 26, 2018*.

Here, the government cannot credibly dispute that Dr. Carter withdrew from the conspiracy on November 26, 2018, nearly five years before the Indictment issued in October 2023. "A defendant is presumed to continue involvement in a conspiracy unless []he makes a 'substantial affirmative showing of withdrawal, abandonment, or defeat of a conspiratorial purpose.'" *United States v. Schorovsky*, 202 F.3d 727, 729 (5th Cir. 2000) (quoting *United States v. Puig–Infante*, 19 F.3d 929, 945 (5th Cir. 1994)). The Fifth Circuit has found that withdrawal from a conspiracy occurs at the time a defendant "has committed affirmative acts inconsistent with the object of the conspiracy that are communicated in a manner reasonably calculated to reach conspirators." *United States v. Heard*, 709 F.3d 413, 428 (5th Cir. 2013) (quoting *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998)). Further, the Fifth Circuit pattern jury instruction defines withdrawal as requiring "the defendant to make a substantial showing that he took some affirmative step to terminate or abandon his participation in the conspiracy. In other words, the defendant must demonstrate some type of affirmative action that disavowed or defeated the purpose of the conspiracy." Fifth Circuit, Pattern Jury Instruction No. 2.18 (2019).

The Fifth Circuit requires only that a defendant commit an affirmative act inconsistent with the object of the conspiracy, but other circuits have regularly found that withdrawal is established where the end of the relationship also results in all ties being severed. *See, e.g., United States v. Goldberg*, 401 F.2d 644, 648–49 (2d Cir. 1968) (finding that the defendant established withdrawal where he left his employment outside of the limitations period and there was "an absence of evidence of activity after the cutoff date"); *United States v. Nerlinger*, 862 F.2d 967, 974–75 (2d Cir. 1988) (finding that the defendant's resignation and closing of the account through which the fraudulent scheme was perpetrated constituted a withdrawal from the conspiracy); *United States v. Lowell*, 649 F.2d 950, 955 (3d Cir. 1981) (cleaned up) ("[W]here fraud constitutes the standard operating procedure of a business enterprise, affirmative action sufficient to show withdrawal as a matter of law from the conspiracy embodied in the business association may be demonstrated by the retirement of a coconspirator from the business, severance of all ties to the business, and consequent deprivation to the remaining conspirator group of the services that constituted the retiree's contribution to the fraud."); *United States v. Antar*, 53 F.3d 568, 583 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) (finding that, in addition to ending the employment relationship, the "total severing of ties with the enterprise," such that the defendant neither "continues to do acts in furtherance of the conspiracy" nor "continues to receive benefits from the conspiracy's operations" thereafter, is sufficient to show withdrawal).

Dr. Carter's November 26, 2018 letter to Vivature is a clear withdrawal from any such conspiracy. *See* Ex. 1. The Termination Letter, sent to Vivature CEO Mouzon Bass, states that Dr. Carter "formally resign[s] from all activities associated with Vivature" and asks that Vivature remain his name "from any and all activities effective immediately." *Id.* Further, upon receiving this information, Vivature immediately ceased paying Dr. Carter a medical director stipend. *See*

Ex. 7. Indeed, the Indictment does not contain any allegations that Dr. Carter's alleged participation continued after his withdrawal on November 26, 2018. The government has brought an indictment against Mr. Bass and others in part in connection with, as the government alleges, the same conspiracy but for a longer time frame. The exclusion of Dr. Carter from that indictment and count is telling and leads to the conclusion that there is no genuine dispute that Dr. Carter's participation in any alleged conspiracy ended by November 26, 2018.

While the government may attempt to argue that there was a communication with a patient after withdrawal from the conspiracy, the evidence shows that Dr. Carter clearly communicated that he had resigned from Vivature in November 2018—which is consistent with his affirmative withdrawal from the conspiracy. *See* Ex. 8. At all times, Dr. Carter acted consistent with his intent to unequivocally withdraw from any alleged conspiracy.

> 2. *The government violated the statute of limitations because it improperly sealed the Indictment.*

The Fifth Circuit has held that where an indictment was improperly sealed, the statute of limitations is not tolled. *United States v. Boswell*, No. 23-30315, 2024 WL 3506194, at *6 (5th Cir. July 23, 2024); *United States v. Sharpe*, 995 F.2d 49, 50 (5th Cir. 1993). An indictment is properly sealed where it is requested "for any legitimate prosecutorial objective or where the public interest otherwise requires it." *United States v. Sharpe*, 995 F.2d 49, 50 (5th Cir. 1993).

In this case, the government has not demonstrated that it had a proper purpose in sealing the Indictment. Dr. Carter had known for years by the time of the October 2023 Indictment that he was under investigation and had met with the government. *See* Exs. 2, 4. He had been told on at least two occasions to expect an Indictment against him, and he had clearly not been deemed a flight risk by the government. The only rationale that Dr. Carter is aware that the government used

for its sealing of the Indictment was that Dr. Carter's "arrest will have a chilling effect on the [*Bass*] investigation." *See* Ex. 5.

But the ongoing investigation had nothing to do with Dr. Carter, but rather had to do with a separate ongoing COVID-19 scheme. As discussed *supra*, Dr. Carter had long withdrawn from any alleged conspiracy and the facts and scheme potentially at issue in 2023 had nothing to do with any allegations against him dating back to 2018. The government admits that it required further investigation, after years of ongoing investigation and cooperation by Dr. Carter, to determine if there was meaningful relation to the *Bass* indictment until after January 2024. These statements directly contradict the government's proffered rationale for sealing the Indictment. Further, the Indictment indicates that an investigation into the alleged conspiracy that would lead to Dr. Carter's Indictment and Count I of *Bass* had been ongoing since at least March 2021. Indictment ¶ 21. Importantly, it is understood that at least some of the *Bass* defendants were advised of the investigation and of their status within the investigation well before their indictments.

It is clear that the government did not genuinely believe in October 2023 that Dr. Carter's arrest would have a chilling effect on anyone because it is the one that told at least some of the *Bass* defendants of their status in the investigation. Further, as the conduct alleged in the Indictment against Dr. Carter had ended nearly five years prior, there was no public interest present to protect.

The decisions in *United States v. Rogers* and *United States v. Gigante* are instructive in this case. The court in *United States v. Rogers* found that there was no legitimate prosecutorial need for sealing the indictment and "a unilateral extension by the government of the limitations period under the guise of 'gathering evidence' would [not] be a 'legitimate prosecutorial objective' in

view of the length of the delay." 781 F. Supp. 1181, 1191 (S.D. Miss. 1991) (finding that the government was time-barred from prosecuting the offenses charged in the indictment). Just as here, the government in *Rogers* did not demonstrate that the sealing was necessary in order to maintain secrecy, nor that the defendant could not be located or was likely to flee. Further, just as Dr. Carter knew for years prior to his Indictment about the government's investigation, the "evidence is uncontroverted" that the *Rogers* defendant was aware of the investigation against him. *Id*.

In *Gigante*, the court quickly dismissed the government's assertions that sealing was required for secrecy or flight risk concerns, where the defendant "was well aware for nearly the entire duration of the five-year investigation that he was being investigated, and his counsel was in frequent contact with the [g]overnment about the investigation." 436 F. Supp. 2d 647, 657 (S.D.N.Y. 2006). In fact, the court there found that it could "only reasonably conclude that the indictments were sealed only because the [g]overnment sought to toll the statute of limitations while pursuing a related investigation." *Id*. In holding that the government's desire for additional investigative time is not a legitimate prosecutorial reason to seal the indictment, the court stated that "[s]uch reasoning would radically undermine what the Second Circuit has identified as one of the primary purposes behind having a statute of limitations at all: encouraging prompt investigation of criminal cases." *Id*. (cleaned up).

The facts in *Sharpe* also support a finding that the government lacked a legitimate prosecutorial need for sealing the Indictment. In *Sharpe*, the indictment had been sealed in part in order to locate a co-defendant under the same indictment. Again, the government did not seek to indict anyone with Dr. Carter and has admitted that it intentionally did not seek to indict Dr. Carter with the *Bass* defendants, and required more investigative information, post-indictment of

Dr. Carter and the *Bass* defendants, to determine if such joinder would be appropriate. The risks present in *Sharpe* simply are not at issue with the Indictment.

By improperly sealing the Indictment, the government allowed the statute of limitations to expire. The government's extreme delay in bringing this action has resulted in significant prejudice against Dr. Carter and his ability to defend himself of these charges. *See United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998) (statutes of limitation "are made for the repose of society and the protection of those who may (during the limitation) have lost their means of defense") (cleaned up). As a result, the Court must dismiss the Indictment against him.

### B. The Government Violated Dr. Carter's Sixth Amendment Right to a Speedy Trial by Impermissibly Sealing the Indictment.

The Speedy Trial Act requires that a defendant be tried "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Further, the Defendant is entitled to have charges dismissed if they are not tried within the time allowed for by Section 3161(c). *See* 18 U.S.C. § 3162(a)(2).

Seventy days from October 11, 2023 was December 20, 2023, nearly a month before the government unsealed the Indictment. Given the government's lack of proper purpose in sealing the Indictment, the date used to calculate compliance with the Speedy Trial Act must be the date Indictment was issued. The Indictment should therefore also be dismissed in light of the government's violation of the Speedy Trial Act.

### IV. CONCLUSION

Based on the foregoing reasons, defendant Kyle Carter respectfully requests that the Court dismiss the Indictment with prejudice.

Dated: August 5, 2024                                                   Respectfully submitted,

                                                                        */s/ Jeff Ansley*
                                                                        Jeffrey J. Ansley
                                                                        State Bar No. 00790235
                                                                        jansley@vedderprice.com
                                                                        Arianna G. Goodman
                                                                        State Bar No. 24109938
                                                                        agoodman@vedderprice.com
                                                                        Samuel M. Deau
                                                                        State Bar No. 24135506
                                                                        sdeau@vedderprice.com
                                                                        300 Crescent Court, Suite 400
                                                                        Dallas, Texas 75201
                                                                        469.895.4790

## CERTIFICATE OF SERVICE

I certify that on this date, a true and correct copy of the foregoing document was forwarded to all known counsel of record in this cause *via* the Court's CM/ECF system.

                                                                        */s/ Jeff Ansley*
                                                                        Jeffrey J. Ansley